## SMITH v STATE ex CAMPBELL

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 18, 1932

W. A. Ambrose, Youngstown, for plaintiff in error.

Ford Agey, Youngstown, for defendant in error.

ROBERTS, J.

Now, what is the duty of the court in the situation presented? Counsel for plaintiff in error cite the case of **Painesville Utopia Theater v Lautermilch, 118 Oh St, 167:**

"Whenever the evidence is conflicting and it becomes necessary to weigh it in order to determine where the probable truth lies, or where the evidence is such that different minds might reach different conclusions, then the function of determining the truth of the conflict of the evidence lies with the jury."

Whether different minds might reach different conclusions or not, this is apparent, that the jury reached a conclusion unanimously different from that contended for by counsel for the plaintiff in error.

In the case of **Owens v Owens, 20 Oh Ap, 518,** the first paragraph of the syllabus is as follows:

"The ancient rules for determining the credibility of witnesses are still applicable, and, as they involve personal observation of witnesses while testifying, and a reviewing court does not have that opportunity, it should be slow to reverse a judgment on the weight of the evidence."

Turning to page 191 of the same volume, the case of Kline v The State ex St. Clair, which is also a bastardy case, and readng from the opinion on page 198, it is said:

"We have given a careful examination to the evidence contained in the bill of exceptions in this case. It would doubtless do more harm than good to review the evidence in detail. The bill of exceptions is full of conflicting evidence by witnesses, and discrepancies in relating the facts. There is an unusual amount of conflict in the testimony, even for a case of this character. If the jury believed the testimony of two witnesses to the effect that Kline said to them, regarding the case, that it is the first time he had gone outside, and he got caught, it is difficult to see how it could have rendered any other verdict than it did. It must be born in mind that this court can act only as a court of review, and

does not sit to retry the case on the facts. The witnesses do not appear before this court, and the court is not in as good a position to judge of their truthfulness, accuracy and candor as was the trial court. The province of this court, so far as the facts are concerned, is simply to determine whether the verdict of the jury is so manifestly contrary to the weight of the evidence as to require a reversal of the judgment. Upon our examination of the evidence in this case, we cannot say that the judgment is not sustained by sufficient evidence, nor that it is manifestly contrary to the weight of the evidence."

Having in mind these decisions stating the rule as to the duty of a reviewing court, and applying it to the evidence introduced in this case, this court is not able to say that the verdict is so manifestly against the weight of the evidence as to require or justify a reversal upon that ground.

It is claimed that there was misconduct of counsel and error in the proceedings, through the remarks of the trial court, prejudicial to the defendant. It is urged that counsel for the complainant repeatedly sought to introduce evidence bearing upon offers to compromise made, or claimed to have been made, by the defendant while the parties were at the justice's court. It is true that there was a continued and somewhat persistent effort made on the part of counsel representing the complainant to introduce some testimony concerning an alleged compromise or attempt to make compromise when the parties were a first or second time in the court of the justice of the peace. The court had in mind the rule that offers to compromise or settle as a general proposition are not competent, but the introduction of independent facts occurring during negotiations for settlement are ordinarily competent, and therefore permitted counsel to make preliminary inquiries to a considerable extent in an effort to develop what occurred, if anything, in the way of declarations, independent in nature, which would tend to indicate the guilt of the defendant. However, nothing of importance was elicited resulting from the questions of the attorney or the answers of the witness, so that we are unable to find in the end that anything of a reversible nature occurred in this regard.

It is claimed that there was misconduct on the part of the court occurring during the examination of a witness by the name of Bennett. Bennett testified for the defendant and that the complainant was at his house on a certain evening, that the complainant was there with a man by the name of Smith, and he left for a time during the evening to go somewhere and get some refreshments, coffee and sandwiches. Then this question was asked:

"Q. Tell us whether or not that evening you had any intimate relations with Gladys Campbell, that evening that they were all there, while he was gone for the sandwiches."

Referring, it is assumed, to this man Smith.

"A. Well, on that particular evening I don't believe I recall.
Q. Will you tell us why?
A. Well, we had a party at the home and we were drinking, and I had had relations with Miss Campbell previous to that and after that, but as far as that particular evening, I don't recall.
MR. AGEY: Your Honor, I ask to have the last part of his answer stricken out. ·
COURT: It is stricken out and you must disregard it and you should not have volunteered it."

We apprehend the ruling of the court in this respect was proper as was the admonition to the jury to disregard the answer, which was not responsive or pertinent. Then counsel for defendant said:

"MR. AMBROSE: He was asked that. He didn't volunteer anything. Let us find out what is stricken out here, what is stricken out, Judge, that was answered. He has the right to testify. Is the entire answer stricken out?
COURT: The last part of it, and particularly his volunteering having had relations with her before, he should not have volunteered that, no man would volunteer that."

And this is claimed to have been prejudicial, the statement of the court that no man would volunteer that. Counsel in argument and brief undertakes to state a decided attitude of the court, physically and mentally, having arisen and standing near the witness and stating with considerable vehemence, but we have no authority to conclude that anything of that kind occurred, because we can only derive our information from the record, and that has already been read. We apprehend that the court went fully as far as it was justified in doing and saying that no man would volunteer that. However, the remark was

elicited to some extent by the inquiry of the attorney, but we are not able to say that this transaction was prejudicial or constitutes reversible error.

This concludes all of the errors complained of in brief. It was suggested in argument, as recalled, that the examination taken before the justice of the peace was not filed as required by statute in the Court of Common Pleas as quickly as it should have been. It was filed, however, before the trial and we see no harmful effect in that.

The conclusion is that the judgment of the Court of Common Pleas be affirmed.

FARR and POLLOCK, JJ, concur.